May it please the court, your honor. My name is Chris Cannon. I represent Christian Finze. As the government claims, in this case, the evidence was overwhelming. Even trial counsel below admits that there was really nothing that he could have done. Well, there is something that he could have done. There is a plea agreement on the table. That plea agreement called for a sentence of 37, 46, or 57 months, and he should have advised the client to take it. And he didn't do that. He admits in his declaration that some decisions are the total responsibility of the client, and he didn't advise on the wisdom of accepting that plea agreement. That's ineffective assistance of counsel. You could kind of slice the onion very carefully and say it's abandonment, or he didn't advise, or Finze was unrepresented when it came the time to take the decision whether to go forward with the plea agreement or not. But it's clear that there was no advice of counsel on the decision of whether to go forward with that plea agreement. If you look at the excerpt of record at pages 1033 to 1042, specifically at page 1033, it's clear that when the federal defender was moving to withdraw in this case, the decision was not that Finze wanted to go forward, that he was innocent, that he had all of these defenses. The question was based of a lack of understanding on the plea agreement. What happened procedurally in this case is that Finze had been represented by one appointed assistant federal defender for quite some period of time. He had confidence in that person. They had a good relationship. Then when that assistant was out of town, the head of the office negotiated a plea agreement on behalf of Finze. It wasn't a bad plea agreement. I'm saying that Finze should have accepted it, and he did accept it. The problem was that there was a provision in that plea agreement for getting a two-level reduction under the safety valve. And when his regular public defender came back, he told Finze, don't debrief. It's not in your interest to debrief. Give up the safety valve. Well, we have a problem here in how this plea agreement was presented. There was kind of a bait-and-switch going on because he was sold a plea agreement which told him you had a possibility of a 36-month sentence, but then the person who he developed an attorney-client relationship came back and said, well, that's in the document, but you're just not eligible for that. You're stuck with 47 months. And because of that relationship, because of that confusion, a conflict developed between Finze and his original public defender. That public defender moved to withdraw from the case and asked that new counsel be appointed. He asked that new counsel be appointed to advise Finze on whether Finze should withdraw his plea or whether Finze should go forward. And the transcript is very clear of the in-camera proceeding where he moved to withdraw. The issue is not that Finze thinks that he has some great defense to this case. It's that there was a misunderstanding as to what the plea agreement involved. So the federal defender withdrew and new trial counsel was appointed. In his declaration, he flatly states some decisions are the responsibility of the client. They're the responsibility of the client. He didn't advise him to that. In his declaration, he further states that when you're dealing with he says he did research, he examined the law, he did lots of things, but he also says he didn't do any of those things until after the decision to withdraw the plea had been made. So you have the person who's appointed to represent him saying that, yes, I didn't advise him on the wisdom of this course, and then he further admits he couldn't have advised him on the wisdom of this course because he didn't research the law or the facts until after it happened. If you add up the hours that he did, he, you know, according to his declaration, he claims he spent three and a half hours of discussions prior to the motion to withdraw the plea. That's it. He doesn't say that there was a discussion whether it was a good idea or not. He says based upon discussions with prior conflicted counsel, he thought Finze was adamant, and that wasn't why prior conflicted counsel withdrew. Prior conflicted counsel withdrew because of the issue of the plea agreement not being fully understood. Now, this is what Finze really needed at the point was a lawyer to help him go forward and evaluate the case to go forward and make a decision as to what to do. And simply, that did not happen in this case. And his trial counsels at the Davids are interesting, and they kind of go all over the place. And he says that, well, the strategic – excuse me – I'll now move – I'm moving away from the claim that there was ineffective assistance in the motion to withdraw the plea because I think it's clear there was no advice, nothing happened until after the plea was withdrawn. I think after the plea was withdrawn, the trial representation was also ineffective. And I think that that trial – and I think the ineffectiveness of the trial representation demonstrates just how bad the advice was, the lack of advice on the motion to withdraw the plea. As this Court understands, when you're charged with a controlled substance offense, the defendant – the government doesn't have to prove that the defendant knew it was a specific drug. The government doesn't have to prove the defense knew the drug was – defendant knew the possession of that drug was illegal. All the government has to prove is that the person knows the character of the drug. Well, in trial counsel's opening statement, his 22-line opening statement, he says that, well, the defense in this case is that Finza didn't have the intent to violate the law. He didn't think that there was anything illegal about selling rufanol or selling date-rape drugs or selling phenotrozapam. Well, in that opening statement, he's conceding the elements of the crime. He's saying Finza knew what he had. He knew that he was selling it. He just didn't think it was illegal. That's not a legal defense. And the closing is – the closing is the same. In his closing argument, he's talking about how Finza did not have the intent to violate the law. Well, intent doesn't matter. As long as you know the substance, as long as you intend to sell the substance, which he clearly did, that's a violation of the law. What trial counsel now claims as the defense, let's blame it on the other person, let's claim that all this was going on without Finza's knowledge, is preposterous. And the reason it's preposterous is if you look at – I'm sorry, just one minute. I just want to get the record reference. There was – I'll give you the – there were 487,000 dosages of schedule 4 drugs sold. There were 4,000 dosage units of over-the-counter drugs sold. So what's now claimed to be the defense would have to be that Finza was completely unaware of 99 percent of the activity of what was going on on these Internet sales that came through a German company. He's the person that speaks German. And all that he knew was 1 percent. That's not a rational defense. The rational defense in this case would have been to accept the plea bargain, to go forward with the plea bargain, and to accept the plea bargain. If that would happen, if that would have happened, Finza would be back in Germany now. We wouldn't be having this argument now. There was no reasonable counsel faced with the decision at the time in December of 2003 in Las Vegas would have advised Finza to withdraw from that plea agreement. I'd like to talk about the forfeiture order. Your Honor, the forfeiture order, since we're attacking the conviction, as the conviction falls, the forfeiture order falls. If this was just a habeas claim direct solely as to the forfeiture order, I think the government would have a claim. But not independently. That's correct. Independently. That's correct. Thank you. Thank you, Your Honor. I'll save the rest of the time for rebuttal. May it please the Court. Peter Levitt for the United States. My colleague, Mr. Cannon, nowhere mentions the extremely exacting standard set forth in Strickland under which we must review the present claim. We're not retrying the case. What we're doing is we're looking at Mr. Posen's performance from years and years ago and deciding, first, whether it is so deficient that it falls outside the broad range of presumed reasonableness, and, second, whether that resulted in any legally cognizable prejudice. This defendant can establish neither of Strickland's prongs, much less both. With regard to the plea agreement, the record is not exactly as Finzi represents it to be. When public defender, Mr. Tate, on December 22, 2003, filed a motion to with his motion to withdraw his counsel, it was made clear that Finzi's mind was made up at that point to withdraw his guilty plea. On page 1034 of the excerpts of record, Mr. Tate says he wants a new lawyer. He wants to withdraw his plea. There was some discussion about the applicability of the safety valve. There was some discussion about the applicability of an alleged novel area of law. But the reality is Finzi's mind was made up on 12-2203. And he was made up. Why do you think that relieves counsel of a duty to revisit the decision? If counsel reasonably believes it's a bad decision, even though the client's mind is made up, what why shouldn't counsel reevaluate? Counsel did evaluate it, Your Honor. When Mr. Pozen entered the case in early 2004, he was under a time limit imposed by the district court, saying if you want to withdraw your guilty plea and file a notice to withdraw, you have until X date. And during that time, as Excerpts of Record 104 sets forth, Mr. Pozen reviewed records, he reviewed transcripts, he reviewed documents, he researched law regarding the withdrawal, and he had to give extra consideration to the likelihood of success at trial. What Mr. Finzi is essentially that's in Mr. Pozen's uncontradicted affidavit. This is what he did. Now, at that hearing, going back before Mr. Pozen ever entered the scene in December 2003, at that point, Finzi himself addressed Judge Proh, and he told the district court that he had exculpatory evidence that was in the best case overlooked. That's Excerpts of Record 1037. And this is what Finzi said on 12-22-2003. I've got exculpatory evidence that's going to save the day. I'm going to get out of this plea agreement and I'm going to take my shot at trial. What we essentially have here, Your Honor, is a defendant who, in Mr. Pozen's words, made it abundantly clear that withdrawal was his, quote, unwavering intention, end quote. Now, is there a constitutional right to have a lawyer talk you out of a bad decision when your mind is made up, when you are a headstrong client, when you are adamant and doing your own legal research and talking to your own attorneys back in Germany saying, I'm going to go forward? I'm not aware of any. But even if there were, this results in no legally cognizable prejudice under Strickland. And the reason is to meet that highly demanding and heavy burden. It is Finzi's obligation to demonstrate. Finzi's obligation to demonstrate that but for counsel's deficient performance, he would have pled guilty. And on this record, as currently constituted, he cannot make that showing. We also have counsel mentioned that there was a trial defense that fell short of he didn't cite Strickland's exacting standards, but that was the plain implication. And this, like its predecessor, failed – fails on two grounds. First of all, to prevail on the prejudice prong for assistance at trial, one must demonstrate – and this, again, is an exacting burden – that there is a reasonable probability that but for counsel's deficient performance, the result would have been different. In other words, Finzi would have been acquitted. And against this overwhelming trial evidence, that simply cannot be made. That showing cannot be made. They found in Finzi's printer in his house, hooked up to his computer, a forged letter purporting to be from the Assistant Commissioner of Investigations of U.S. Customs that Finzi's cohorts back in Germany would stick into the packages of drugs bound for the United States, basically telling any intercepting FDA or customs official at our border, let it through, it's okay, I'm John Verone of Customs, they had the man dead to rights. If he had objected to the admission of admissible evidence, if he had lodged frivolous objections, if he had argued untenable defenses, there is nothing to undermine confidence in this verdict. Right. Well, I think it's a strong case against Finzi, and that's why it does raise a question on the withdrawal plea, because what counsel says as an affidavit is that he didn't recommend anything. I did not suggest to Mr. Finzi that I had recommended that he withdraw his plea. He says in his affidavit that he had nothing, no quarrel with the prior assessment being made by previous counsel, that the plea agreement was a good one, and that the prior counsel had given the advice to take it. So I understand the force of your argument saying that he's adamant, there's no doubt about that. The question is whether counsel should have investigated further and then made a recommendation, I think. Your Honor, Your Honor is correct. There is no recommendation, there is no record evidence that when Mr. Pozen came into the case, he grabbed Finzi by the lapel, shook him, and said, listen, you fool, you have to take this deal. This is the best thing you're ever going to get. But the operative question is what the Constitution requires. Right. And I don't think it's the strongest authority that you have that the, if the defendant insists that he's going to take a bad deal, that the, as I understand what happened here, that the counsel didn't make a very good, very strong attempt to argue him out of it. Well, what's the closest case to that? Your Honor, I can't cite a case right off the top of my head to support that proposition if Your Honor would. Well, you just argued to us that there's no case that says that he has to, and now we say, well, what's the case that says that he doesn't have to, and you don't can't cite a case for that either, so. No, Your Honor, but I know that nothing is cited to support the proposition that what Mr. Posen did in this case by not forcefully arguing him out of a plea that now, in retrospect, after 17 convictions, looks like a pretty good deal, constitutes ineffectiveness or worked any legally cognizable prejudice. Well, Mr. Levitt. Oh, go ahead. Mr. Levitt, counsel doesn't have an obligation to shake him off of a plea. He doesn't shake him by the lapels or even forcefully argue, but doesn't counsel constitutionally have an obligation to advise the client about the pros and cons of pleading guilty and the pros and cons of going to trial, and if the client's headstrong and wants to reject the advice, that's fine, but counsel's not a bump on a log. Don't they have an obligation to give their client the benefit of their insight and judgment and wisdom in the case? Yes, Your Honor, that's correct. Counsel does. And there's – I don't believe there's anything in the record as currently constituted to suggest that Mr. Posen did not do that. Well, he says he didn't suggest making any recommendations to him. I mean, here's my problem with it, and it may cut it a lot of different ways, but new counsel comes in and the judge says, we're going to give you a short period of time to talk to your client and advise him on whether he really wants to go through with the plea deal. Counsel comes in and he says, I have no reason to quarrel with the prior advice. I think it was good advice. But in his affidavit, he just says, well, I didn't make any recommendations. He was – his mind was made up. And maybe that's the end of it, but it seems to me, you know, we're dealing with a case, too, where there's no evidentiary hearing, that those are some of the issues that might have been flushed out there. You have some obligation, especially when the court says, go talk to your client, tell me whether you still want to do it, and then to say, well, I made no recommendation at all, that doesn't – that rings pretty hollow. I agree with Your Honor's characterization, but I don't believe the record as fairly reviewed relates that that is what happened. On excerpts of record, page 86, Mr. Posen said, I told him, and he tells all his clients, about the dangers of withdrawing and going to trial. On excerpts of record, page 104, Mr. Posen's first affidavit, he writes, I discussed extensively with Mr. Finzi the pros and cons of going forward with sentencing versus filing a motion to withdraw the plea. Mr. Finzi had indicated that it is his wish to file a motion to withdraw the plea and to proceed to trial in this matter. Mr. Posen never told Mr. Finzi that he had a complete defense. He said he'd never get his client's hopes up and he doesn't want to set up precisely what's happening now at 2255. And you kind of look – looking through the affidavits in his testimony, I don't think he really thought he had any defense. Do you? I don't disagree with Your Honor. It's a tough road to hoe at trial, and I think the best way to address it is blame the cooperator and cut the cooperator up on cross-examination and hope for the best. So Your Honor is quite right. There is nothing in any of these fulsome affidavits that states, I told Mr. Finzi in my professional judgment this is a bad idea. It's not there. But it does say he researched it. It does say he studied it. It does say he had extensive conversations with him about the pros and cons of it. And it does say that he spoke to prior counsel and that prior counsel, on excerpts of record, page 86, advised that he was doing this contrary to their advice and was adamant about withdrawing his plea. Counsel's performance falls well within the constitutionally permissible range, and there is no legally cognizable prejudice. Thank you. Thank you, Your Honors. I'll just be very quick. This isn't a case of not forcibly grabbing somebody by the lapels. This is a case where trial counsel said it was the sole province of the defendant to make that decision. When counsel for the government talked to the sole province of Mr. Pozner, trial counsel said the decision whether to withdraw the plea was the sole province of the defendant. He did not advise regarding that decision. Well, in fairness, he did say, I discussed within the dangers of withdrawing this plea. I mean, that's a ---- Your Honor, the excerpt you're looking at there is at page 104 of the excerpt of record, and that's really not a portion of the declaration that was submitted under penalty of perjury. What he's referring to there is an excerpt of the notice to withdraw the plea that was a pleading that was filed in the district court in support of the motion to withdraw the plea. He did not, when it came to prepare the declaration under oath, he did not say he discussed it extensively with Mr. Finza. If you look at that carefully, what that is, that's just a quotation from a brief. Well, I'm on page 87. As I look at page 87, Your Honor, I read it to say, having determined that Mr. Finza wanted to withdraw the plea, my focus for the duration of the limited time we had    on notice of intent to withdraw the plea was therefore on determining whether there is a viable legal basis for withdrawing the plea. And when he's talking about that at ---- I did not suggest to Mr. Finza that I recommended that he withdraw his plea. At that point, he already had discussions regarding defenses with the conflicted ---- and I'm adding the word conflicted ---- Federal Public Defender, and it rejected their advice. So he's referring to the discussions between Mr. Finza and the Federal Defender. He's not saying that he had those discussions with Mr. Finza. Well, I'm talking about the first sentence on 87 where he says, of course, I discussed the dangers and risks of going to trial. I mean, it's pretty generic, but there it is. But then when he filed his second declaration, he said it's the sole province of the defendant, and he completely admitted that he abandoned doing anything. And I think if the court will also ---- Isn't it the sole province of the defendant to make the decision? The lawyer can't make that decision for his client. That's absolutely correct. But the lawyer has a duty to advise his client as to what's a good idea and what's a bad idea, and Mr. Finza holds and admits he didn't do that. But ultimately, it's the client's decision. You agree with that.  Ultimately, it's the client's decision with the advice and guidance of counsel. And one thing which is kind of ---- which is a specter over this case is that somehow that Mr. Finza is taking charge of things and being uncooperative thinks that he has some sort of magic exculpatory evidence that he was going to get through a trial. I think if you look clearly at the excerpt of record of pages 1033 to pages 1034, it's very clear that the dispute between Finza and the Federal Defender's was not some sort of miraculous acquisition of exculpatory material. It was that one of the things that I had ---- but not only that, it was more complicated, is that another component of the safety valve requires Mr. Finza to go over and essentially be debriefed. One of the things I had cautioned Mr. Finza was that perhaps he should not go over and be debriefed. So when you're having the Federal Defender explaining in an in-camera proceeding what the conflict was, the conflict was the safety valve issue of the plea, which hadn't been adequately explained. And if Mr. Posen had adequately explained the plea agreement, he admitted the evidence was overwhelming, we would have the plea agreement, Mr. Finza would be out of custody, and we wouldn't be here today. Thank you. Thank you. The case discarded is submitted for decision.
judges: Bennett, Schroeder, Thomas